# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL H. WOODWARD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>W. KOKOR, et al.,<br><br>　　　　Defendants. | Case No. 1:17-cv-00722-BAM (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Daniel H. Woodward ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint, filed on May 24, 2017, is currently before the Court for screening. (ECF No. 1.) Plaintiff filed a consent to Magistrate Judge jurisdiction. (ECF No. 6.) In the complaint, Plaintiff names W. Kokor and Does 1 through 10 as defendants.

**I.　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

1

from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California. Plaintiff names the following defendants both in their official and individual capacity: W. Kokor and Does 1 through 10. Plaintiff's allegations are as follows:

On approximately August 28, 2016, Plaintiff underwent surgery on his left knee. Post-surgery, the surgeon prescribed Osteobiflex to ensure full recovery of the knee, joint healing, and treatment of the surrounding tissue. On September 9, 2016, Plaintiff submitted a request seeking an

answer as to why he had not received the prescription. Doe 1[1] replied saying Plaintiff no longer had an order for Osteobiflex. When Plaintiff met with Dr. Kokor for a follow up interview, the doctor denied the prescription on two occasions. Kokor stated, "In my opinion there is no proof Osteobiflex does anything to help joint pain."[2] Plaintiff alleges that this statement was made despite Kokor's knowledge that there were publications from within the international medical community, the Board of Orthopedic Surgeons, and American Medical Association confirming that Osteobiflex in fact heals post-surgical knee trauma, joint involvement and surrounding tissue. Plaintiff further alleges that Osteobiflex is widely recommended by the Board of Orthopedic Surgeons Association and American Medical Association for post-knee-surgical care, as codified by the American Medical Journal.

As a result of Kokor's refusal to fill Plaintiff's prescription, Plaintiff's injury has caused him to suffer intermittent acute pain on a daily basis. Plaintiff also suffers from loss of strength, loss of sleep triggered by movement at night, mobility distress, inability to exercise as he used to, and inability to bend his left knee past a 10% flexation without the left leg collapsing, all of which has triggered unnecessary suffering of extreme emotional distress. Despite numerous written and verbal requests for care during doctor/patient interviews, Kokor and Doe Defendants denied Plaintiff proper post-surgery care. In addition, Defendants produced a false, incomplete or negligent medical record, ignoring the urgent nature of Plaintiff's suffering, and no meaningful treatment regimen was prescribed to prevent the levels of pain suffered during Plaintiff's post-surgery recovery.

Plaintiff further alleges that as licensed medical board professionals Defendant Kokor and Doe Defendants owed a duty of care to Plaintiff by providing him with competent and humane medical treatment under CDCR medical policy and the Hippocratic Oath. Despite this duty, the progression of Plaintiff's knee conditions that caused him extreme pain on a daily basis, and Plaintiff's verbal and written requests for care that outline both his original and worsening symptoms, Plaintiff was ignored by Defendants and Plaintiff's documents were marked as routine.

---

[1] Plaintiff identifies Doe 1 on page 3 of his complaint, but reiterates the same incident on page 10 without identifying which Doe Defendant replied to his inquiry.

[2] On page 3 of the complaint Kokor is quoted saying "joint pain," but on page 10 the same incident is reiterated and Kokor is quoted saying "joint health."

All of these incidents combined demonstrate that Defendants acted with deliberate indifference, knowingly allowing Plaintiff's serious medical conditions to worsen.

Plaintiff further claims that Doe Defendants, as Chief Medical Officer and Chief Medical Executive,[3] and "Doe Defendants whose last names are Asiah"[4] owed a duty of care to Plaintiff to provide proper supervisory training for medical staff members, and to establish written policies and procedures, as well as unwritten patterns and practices that are consistent with the proper standards of medical care. Furthermore, Doe Defendants did not provide Kokor and fellow Defendant Doe subordinates with proper training regarding patient evaluation, treatment, and patient rights with regard to ensuring necessary qualified care mandated under oath, law, and/or patient rights to receive proper preventative care as recommended by a specialist. Plaintiff claims that the lack of proper post-surgery care he received was part of a continuing pattern of misconduct committed by medical staff at the prison, and was the result of Defendants' express written policies and procedures, as well as unwritten patterns of practice that are applied in a systemic manner to inmates by the orders of Doe Defendants Chief Medical Officer and Executive. These patterns and practices influence a scheme where treatment is refused to patients who really need it.

Plaintiff is requesting general, punitive, and nominal damages, costs, attorney fees, and injunctive relief.

### III. Discussion

#### a. Doe Defendants

Plaintiff names Does 1 through 10 as defendants, as well as Defendants Chief Medical Officer , Chief Medical Executive, and "Doe Defendants who's names are Asiah." "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

---

[3] It is unclear whether the Chief Medical Officer and Chief Medical Executive are included among Doe Defendants 1 through 10.

[4] It is unclear whether "Doe Defendants whose last names are Asiah," (ECF No. 1, p. 11), are the Chief Medical Executive or Chief Medical Officer identified on page 14.

4

### b. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

Plaintiff fails to link Does 1 through 10 to his claims. Plaintiff does not specify which Doe Defendants are responsible for what violations. Though Plaintiff alleges that Doe 1 stated, "You no longer have order for Osteobiflex," Plaintiff fails to link Doe 1 to a specific violation of his constitutional rights. Furthermore, Plaintiff fails to state whether Doe 1 was the individual who denied his prescription, or if Doe 1 was merely communicating a fact to Plaintiff. Doe Defendants 2 through 10 are not properly identified within Plaintiff's complaint, and are not linked to any specific claims. Although Plaintiff does identify Chief Medical Officer, Chief Medical Executive, and "Does whose last names are Asiah" and link them to a failure to train, it is unclear if these defendants are amongst Does 1 through 10. If Plaintiff wishes to amend his complaint, Plaintiff will need to link individual defendants with specific causes of action. Plaintiff must allege what each individual did, or failed to do, that resulted in a violation of Plaintiff's constitutional rights.

### c. Official Capacity Claims

Plaintiff seeks damages and injunctive relief from the Defendants in their individual and official capacities.

The Eleventh Amendment bars federal suits for violations of federal law against state officials sued in their official capacities for damages and other retroactive relief. Quern v. Jordan, 440 U.S. 332, 337 (1979); Peralta v. Dillard, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc); Pena v. Gardener, 976 F.2d 469, 472 (9th Cir. 1992). The Eleventh Amendment also bars federal suits for violations of state law against state officials sued in their official capacity for retrospective and prospective relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984); Pena, 976 F.2d at 473. However, the Eleventh Amendment does not bar federal suits against state officers sued in their official capacities for prospective relief based on an ongoing violation of plaintiff's federal constitutional or statutory rights. Edelman v. Jordan, 415 U.S. 651 (1974); Ex Parte Young, 209 U.S. 123, 159–60 (1908); Central Reserve Life of N. Am. Ins. Co., 852 F.2d 1158, 1161 (9th Cir. 1988). Thus, the Eleventh Amendment does not preclude suits against state officials for injunctive relief. See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997); Ex Parte Young, 209 U.S. 123. In addition, the Eleventh Amendment does not bar federal suits for violations of federal law or state law against state officials sued in their individual capacities for damages. Scheuer v. Rhodes, 416 U.S. 232, 238 (1974); Ashker v. Cal. Dep't. of Corrs., 112 F.3d 392, 394 (9th Cir. 1997); Pena, 976 F.2d at 473-74.

Plaintiff is barred by the Eleventh Amendment from seeking damages from any of the Defendants in their official capacities, though he may seek prospective injunctive relief against them, assuming that Plaintiff is able to state a cognizable constitutional violation.

### d. Supervisory Liability

To the extent Plaintiff seeks to bring suit against the Chief Medical Officer and the Chief Medical Executive (or any other defendant), and "Doe Defendants whose last names are Asiah," based on their roles as supervisors, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. Cal. Dep't of Corrs. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa Cty., 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has failed to state a cognizable claim against any supervisors. Plaintiff has failed to identify which policies are responsible for which violations, or if any individual supervisors were involved in the allegations set forth. Plaintiff claims that the lack of proper post-surgery care he received was part of a continuing pattern of misconduct committed by medical staff at the prison, and was the result of Defendants' express written policies and procedures, as well as unwritten patterns of practice that are applied in a systemic manner to inmates by the orders of Doe Defendants Chief Medical Officer and Chief Medical Executive. Plaintiff alleges that the policies in place influence a system in which treatment is refused to patients who really need it. Although a deficient policy may link a supervisor to a claim, Plaintiff has failed to identify any specific policies that violate his constitutional rights and are the moving force of the violation in question.

### 1. Failure to Properly Train and Supervise

Plaintiff also asserts failure to train allegations against Defendants Chief Medical Officer, Chief Medical Executive, and "Defendants whose last names are Asiah." A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. See City of Canton, Ohio v. Harris, 489 U.S. 378, 387–90 (1989). "The cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed." Wardell v. Nollette, No. C05–0741RSL, 2006 WL 1075220, at *3 (W.D. Wash. Apr. 20, 2006) (collecting cases); see also Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (to impose liability for a supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result

in a constitutional violation") (citation, internal quotation marks omitted), cert. denied, 540 U.S. 826, 124 S. Ct. 181, 157 L. Ed. 2d 48 (2003).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1360–61, 179 L.Ed.2d 417 (2011)). In this "narrow range of circumstances," a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." Connick, 131 S. Ct. at 1361.

Here, Plaintiff makes conclusory statements that Defendants Chief Medical Officer, Chief Medical Executive, and "Defendants whose last names are Asiah," failed to provide appropriate training for medical staff members on a variety of policies and procedures that are consistent with the proper standards of medical care. Plaintiff alleges that this lack of training regarding patient evaluation, treatment, and patient rights was a violation of his constitutional rights. Plaintiff's conclusory statements do not show that that his injury was a "highly predictable consequence" of Defendants' failure to train, or that the failure to train was "patently obvious." Id. at 1361.

### e. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The indifference must be substantial, and "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837 S. Ct. 1970 (1994).

Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical needs against Defendant Kokor for denying Plaintiff his prescription for Osteobiflex. A difference in opinion amongst physicians in regards to the appropriate course of treatment does not constitute deliberate indifference. See Toguchi, 391 F.3d at 1059-60. Plaintiff fails to show that Kokor failed to take any action other than not providing a prescription for Osteobiflex. Plaintiff alleges that Kokor stated, "In my opinion there is no proof Osteobiflex does anything to help joint pain." Though there are differing opinions in regards to treatment between Plaintiff and Kokor, this does not amount to deliberate indifference to serious medical needs.

Plaintiff also fails to state a cognizable claim for deliberate indifference to serious medical needs against any Doe Defendants. Plaintiff fails to identify any actions taken by Doe Defendants that would amount to deliberate indifference. Plaintiff alleges that due to his post-surgery treatment he suffered from loss of strength, loss of sleep triggered by movement at night, mobility distress, inability to exercise as he used to, and inability to bend his left knee past a 10% flexation without the left leg collapsing, all of which triggered unnecessary suffering of extreme emotional distress. Although Plaintiff does state that Doe 1 told Plaintiff that he no longer had an order for Osteobiflex, this action does not amount to deliberate indifference. Other than the denial of Osteobiflex, Plaintiff makes conclusory statements regarding the lack of treatment after his surgery, and fails to state facts that support a claim of deliberate indifference. Although Plaintiff's claims may amount to mere negligence or malpractice, this does not support a constitutional claim of deliberate indifference. Broughton, 622 F.2d at 460. If Plaintiff is to amend his complaint he will need to

1 include facts that state what, if any, treatment he was given, or if he was denied all post-surgery care.

### f. Preliminary Injunction

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (quotations and citations omitted) (emphasis in original).

"A federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985). The pendency of this action does not give the Court jurisdiction over prison officials in general. Summers v. Earth Island Institute, 555 U.S. 488, 491–93, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491–93; Mayfield, 599 F.3d at 969.

Plaintiff has failed to state a cognizable claim that is likely to succeed on its merits at this time. In order for the Plaintiff to meet the standard required to receive preliminary injunctive relief he will need to amend his complaint, and the court can then determine if he has met the standard required to receive preliminary injunctive relief.

///

///

**IV. Conclusion and Order**

The Court finds that Plaintiff fails to state a cognizable claim against Defendants W. Kokor and Does 1 through 10.

The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes, in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S. Ct. at 1948–49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend for failure to state a claim upon which relief can be granted;

2. The Clerk's Office shall send Plaintiff a complaint form;

3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and

///
///
///
///
///
///

4. **If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed, without prejudice, for failure to obey a court order and failure to state a claim.**

IT IS SO ORDERED.

   Dated: __**June 13, 2017**__                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE